**BROWN KWON & LAM, LLP**
Clara Lam, Esq. (CL6399)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JESSICA SERRANO,** *on behalf of herself and others similarly situated*, <br><br> **Plaintiff,** <br><br> - against - <br><br> **ARAMARK CAMPUS, LLC,** <br><br> **Defendant.** | **Case No: 2:21-cv-2614** <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiff JESSICA SERRANO ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to herself, and upon information and belief as to other matters, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, ARAMARK CAMPUS, LLC ("Defendant") and alleges as follows:

**INTRODUCTION**

1.    Plaintiff brings this action on behalf of herself and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid wages due to time-shaving, (2) unpaid overtime wages due to time-shaving,

(3) unpaid wages for compensable work time outside of scheduled work hours, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff also brings this action on behalf of herself and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq*., and Article 19, §§ 650 *et seq*., the supporting New York State Department of Labor Regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid wages due to time-shaving, (2) unpaid overtime wages due to time-shaving, (3) unpaid wages for compensable work time outside of scheduled work hours, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

3.      Plaintiff further alleges, pursuant to the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), that she was deprived of her statutory rights as a result of Defendants' discriminatory employment practices on the basis of disability and failed to provide reasonable accommodations, and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

5.      This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.      This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiff*

8.      Plaintiff JESSICA SERRANO is an adult who resides in Suffolk County, New York.

9.      Plaintiff is a covered employee within the meaning of the FLSA and NYLL.

10.     Plaintiff retained Brown Kwon & Lam, LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

### *Defendant*

11.     At all relevant times, Aramark provides food service, facilities and uniform services to multiple industries throughout the United States and worldwide. Aramark contracts with multiple industries, from schools, hospitals, and other facilities, to provide services. At all relevant times, one of Aramark's food service industries is operated through Defendant ARAMARK CAMPUS, LLC.

12.     At all relevant times, Defendant employed Plaintiff and similarly situated employees.

13.     At all relevant times, Defendant had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

14.     At all relevant times, Defendant was and continues to be employers within the meaning of the FLSA and NYLL.

### *ARAMARK CAMPUS, LLC*

15.     Corporate Defendant ARAMARK CAMPUS, LLC is a foreign limited liability company organized under the laws of the State of New York with a principal place of business

located at 2400 Market Street, Philadelphia, PA 19103, and an address for service of process located at c/o CT Corporation System, 28 Liberty Street, New York, New York 10005.

16.     At all relevant times, ARAMARK CAMPUS, LLC has done business as Aramark.

17.     At all relevant times, ARAMARK CAMPUS, LLC had an annual dollar volume of sales in excess of $500,000.

18.     ARAMARK CAMPUS, LLC is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

19.     At all relevant times, ARAMARK CAMPUS, LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

20.     ARAMARK CAMPUS, LLC applies the same employment policies, practices and procedures to all non-exempt employees at Aramark.

21.     ARAMARK CAMPUS, LLC is listed as the payor on pay stubs received by employees of Aramark.

## FLSA COLLECTIVE ACTION ALLEGATIONS
### (UNPAID WAGES)

22.     Plaintiff brings the First Cause of Action, the FLSA claims, on behalf of herself and all similarly situated current and former non-exempt employees (including, lead cooks), employed at Aramark owned, operated, and/or controlled by Defendant, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

23.     At all relevant times, Plaintiff and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and

have been subject to Defendant's common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and FLSA Collective Members their full wages for all hours worked, including overtime wages for all hours worked in excess of forty (40) per workweek. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

24.     All of the work that Plaintiff and FLSA Collective Members have performed have been assigned by Defendant, and/or Defendant has been aware of all of the work that Plaintiff and FLSA Collective Members have performed.

25.     Defendant is aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

26.     For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendant's records.

## NEW YORK CLASS ACTION ALLEGATIONS

27.     Plaintiff brings the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of herself and a class of persons consisting of all current and former non-exempt employees (including, lead cooks), employed at Aramark owned, operated, and/or controlled by Defendant, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

28.     Excluded from the Class are Defendant, Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendant; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

29.     The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendant's payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendant's records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendant's records. Notice can be provided by means permissible under Rule 23.

30.     The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class.

31.     Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

32.     Plaintiff and Class Members were subject to the same practices of Defendant, as alleged herein, of (i) failing to pay wages due to time-shaving, (ii) failing to pay overtime wages due to time-shaving, (iii) failing to pay wages for compensable work time after scheduled work hours, (iv) failing to provide proper wage notices, and (v) failing to provide proper wage statements, in violation of the NYLL.

33.     Plaintiff and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices and patterns of conduct. Defendant's corporate-wide policies and practices affected all Class Members

similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member.

34.    Plaintiff and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures under the NYLL.

35.    Plaintiff is able and willing to fairly and adequately protect the interests of Class Members and have no interests antagonistic to Class Members.

36.    Plaintiff are represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

37.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

38.    On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would

result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

39.     The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

40.     Defendant and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

41.     Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiff and individual Class Members and include, but are not limited to, the following:

      a.  Whether Defendant employed Plaintiff and Class Members within the meaning of the NYLL;

      b.  Whether Defendant paid Plaintiff and Class Members the full and proper wages for all hours worked;

      c.  Whether Defendants paid Plaintiff and Class Members their overtime premium for all hours worked;

      d.  Whether Defendants required Plaintiff and Class Members to work while they were off-the-clock;

      e.  Whether Defendants paid Plaintiff and Class Members for time spent working while they were off-the-clock;

f.    Whether Defendants failed to furnish Plaintiff and Class Members with proper wage notices, as required by the NYLL; and

g.    Whether Defendants failed to furnish Plaintiff and Class Members with proper wage statements with every payment of wages, as required by the NYLL.

## STATEMENT OF FACTS

*JESSICA SERRANO*

42.    On or about October 5, 2017, Defendant hired Plaintiff JESSICA SERRANO as a server at one of their contracted New York State schools in Suffolk County, North Country Road Middle School, located at 191 N Country Road, Miller Place, NY 11764.

43.    In or around January 2019, Defendant promoted Plaintiff to the Lead Cook position and transferred her to work at another one of their contracted New York State schools in Suffolk County, Laddie A. Decker Sound Beach School, located at 197 N Country Road, Miller Place, NY 11764.

44.    Plaintiff worked for Defendant through the end of June 2019. During the summer of 2019, Defendant informed Plaintiff that they lost their contract to provide food services for the school facilities. In or around August 2020, Defendant contacted Plaintiff to return to work for them as Lead Cook at Laddie A. Decker Sound Beach School after they regained their contract from Whitsons Culinary Group, which was servicing schools for the September 2019 through June 2020 academic year.

45.    The duties of a lead cook included preparing students' breakfast and lunch, stocking inventory, picking up produce, ingredients and supplies from nearby schools, washing dishes, cleaning the kitchen, submitting paperwork for supply orders, among others. Lead cooks did not have the power to hire or fire employees, nor were they charged with payroll or scheduling.

46.    At all relevant times, Defendant required Plaintiff and similarly situated employees to clock-in and clock-out by calling an Aramark-operated hotline to clock-in and clock-out.

However, Plaintiff and similarly situated employees were not permitted to clock in earlier than fifteen (15) minutes before their scheduled start time.

47.    At all relevant times, while employed as a lead cook for Aramark, Plaintiff was scheduled to work from 7:30am to 2:30pm, for five (5) days a week. However, at all relevant times, Plaintiff was actually arriving to begin work as early as 5:30am to 6:30am every workday. At all times, Plaintiff was unable to clock-in until at or around 7:30am due to Defendant's timekeeping system. At all relevant times, Plaintiff was only compensated for her hours worked until 2:30pm. However, at least three (3) times per week, Plaintiff was required to stay until 3:00pm to finish her work. As a result, Plaintiff was not compensated for at least nine (9) hours per workweek. During weeks in which these additional hours exceeded forty (40) hours per week, such hours should be paid at the overtime rate.

48.    At all relevant times, the breakfast shift at Laddie A. Decker Sound Beach School started at 8:15am. At all times, Plaintiff did not have any assistance preparing breakfast for all students and as such was required to arrive well before 7:30am to ensure that breakfast was timely prepared and served. At all times, Plaintiff did not have any additional employee assisting her until around 9:30am. Furthermore, at least twice a week, Plaintiff was required to pick up ingredients from three other nearby schools before the start of her shift because ingredients were purchased in bulk orders for all of the nearby schools in a District and delivered to only one of the schools to be redistributed on a need basis. As such, Plaintiff was required to start her shift well before 7:30am each workday.

49.    Furthermore, at all relevant times, at the end of each month, all lead cooks were required to submit their respective inventory to Defendant. As such, Plaintiff was required to work four (4) additional hours per month after the end of her scheduled shift to compile inventory data

to send to Defendant. In order to complete inventory and input the data into Aramark-issued iPads, Plaintiff was further required to stay an additional hour to complete inventory for two days per month. Altogether, this resulted in six (6) hours of unpaid compensable work time per month.

50.     Based on conversations with other employees, other lead cooks were similarly only paid for their scheduled hours despite being required to work for over an hour before their scheduled start time to prepare breakfast and to continue working after the end of their scheduled shifts.

51.     In or around January 2019, Plaintiff complained to her supervisor, Grace Maschinski, that she needed to work additional hours in order to finish all of her work, for which she was not compensated.

52.     On or about March 22, 2019, Plaintiff complained again to her supervisor, Grace Maschinski by email that she "can no longer keep putting all these extra [hours] and not be able to clock in until 7:30." In response to Plaintiff's complaints, Defendant hired an additional part-time employee, who only worked two days per week, four hours per day, in an effort to alleviate Plaintiff's workload. However, as the additional employee did not start until after the breakfast shift, Plaintiff was still required to start her workday between 5:30am and 6:30am. Thus, even after putting Defendant on written notice that she was being required to work off the clock, Defendant continued to refuse to compensate Plaintiff for all hours worked.

53.     For the academic year from September 2019 through June 2020, Defendant lost their contract to Whitsons Culinary Group, and Whitsons Culinary Group thereafter employed Plaintiff in the same position, performing the same duties. While Plaintiff was employed under Whitsons Culinary Group, Plaintiff requested to be paid for more hours than when she was employed under Aramark because Plaintiff's scheduled hours were insufficient for all of the duties

assigned to her. Whitsons Culinary Group agreed to compensate Plaintiff for more hours worked than she was compensated for under Aramark for working the same position and duties. At all relevant times, Whitsons Culinary Group agreed to compensate Plaintiff from 6:30am to 2:30pm, for five (5) days per week.

54.    At the end of August 2020, Grace Maschinski called Plaintiff to inform her that Defendant was once again taking over the contract to provide food services for the schools in her district.

55.    Upon being rehired to work for Defendant, Defendant changed Plaintiff's schedule back to 7:30am to 2:30pm, for five (5) days a week, even though there were no changes to her position or duties.

56.    In September 2020, Plaintiff worked for Defendant for approximately three (3) weeks. Throughout this period, Plaintiff was compensated only for her hours worked between 7:30am to 2:30pm, for five (5) days per week. At all relevant times, Plaintiff started her work at 6:00am every workday and worked until 3:00pm, for at least three (3) days per week.

57.    From in or around January 2019 through in or around March 2019, Plaintiff's regular rate of pay was $12.00 per hour. From in or around March 2019 through June 2019, Plaintiff's regular rate of pay was $15.00 per hour. From in or around September 2020, Plaintiff's regular rate of pay was $16.50 per hour. At all relevant times, Plaintiff was not compensated overtime premium for hours worked in excess of forty per workweek. Other similarly situated employees were similarly not paid their overtime premium.

58.    At all times, Plaintiff worked without any set meal breaks and was unable to take a clear and free meal break.

59.    At all times, Defendant was aware that Plaintiff and similarly situated employees were working beyond their scheduled paid hours, but Plaintiff and similarly situated employees were not compensated for all of their hours worked. For weeks in which Plaintiff and other similarly situated employees worked in excess of forty (40) hours per week, such time-shaved hours were overtime hours worked.

60.    Defendant's time-shaving policies and failure to pay employees for all compensable hours worked, resulted in a systematic failure to pay the full and proper wages for all hours worked by Plaintiff and other similarly situated employees.

61.    Throughout their employment with Defendant, Plaintiff and similarly situated employees did not receive proper notices of pay rate or pay day from Defendant, as required under the NYLL.

62.    At all relevant times, Plaintiff and other similarly situated employees did not receive proper wage statements from Defendant. Specifically, their wage statements were improper because they failed to accurately reflect Plaintiff's and other employees' actual number of hours worked.

63.    Based on Plaintiff's observations and conversations with her co-workers at Aramark, Plaintiff, FLSA Collective Members and Class Members were similarly paid on an hourly basis.

64.    Based on Plaintiff's observations and conversations with co-workers at Aramark, Defendant paid wages to Plaintiff, FLSA Collective Members and Class Members weekly by check with wage statements.

65.     Based on Plaintiff's observations and conversations with co-workers at Aramark, Plaintiff, FLSA Collective Members and Class Members similarly suffered from Defendant's time-shaving of hours worked and failure to pay full and proper wages for all hours worked.

66.     Based on Plaintiff's observations and conversations with co-workers at Aramark, Defendants failed to provide proper wage notices to Plaintiff and Class Members.

67.     Based on Plaintiff's observations and conversations with co-workers at Aramark, Defendants failed to provide proper wage statements to Plaintiff and Class Members. The wage statements that were provided to Plaintiff and Class Members failed to accurately reflect the employees' actual hours worked and failed to state other required information.

68.     Defendant knowingly and willfully operated their business with a policy of failing to pay the full and proper wages to Plaintiff, FLSA Collective Members and Class Members for all hours worked, in violation of the FLSA and NYLL.

69.     Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiff and Class Members pursuant to the requirements of the NYLL.

70.     Defendant knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members pursuant to the requirements of the NYLL.

*                    *                    *

71.   On or about September 17, 2020, Plaintiff was diagnosed with multiple autoimmune conditions and advised against lifting more than five (5) pounds. On or about September 18, 2020, Plaintiff informed her supervisor, Bernadette Figueiras, that she required an

accommodation and specifically asked if they could transfer her to an office position where she was not required to lift more than five (5) pounds per her doctor's instructions.

72.    On or about September 18, 2020, Bernadette asked for Plaintiff's medical records and Plaintiff forwarded all related documents to Bernadette. Bernadette than informed Plaintiff that since she was unable to work as the lead cook, that she was being replaced and to leave her keys to another employee. Bernadette then informed Plaintiff that she needed to contact human resources regarding her request for an accommodation.

73.    At all times, Plaintiff requested an accommodation to transfer her to a different position within Aramark and did not request for medical leave. Plaintiff was nonetheless informed by human resources that she needed to contact Sedgwick, Aramark's Leave Center. On September 18, 2020, Plaintiff contacted Sedgwick who informed her that she was ineligible for leave under the Family and Medical Leave Act (FMLA) because she was considered a new hire after Aramark lost their contract from September 2019 through June 2020. The Sedgwick representative then informed her that while ineligible for FMLA, they will still try to see if she could obtain leave. Thereafter, no one else from either Aramark or Sedgwick spoke to Plaintiff regarding her request for a disability-related accommodation.

74.    Following Plaintiff's conversation with the Sedgwick representative on September 18, 2020, Plaintiff received two (2) letters from Sedgwick. Plaintiff received a letter dated September 21, 2020 denying her leave under the FMLA due to ineligibility. Plaintiff then received a second letter dated October 6, 2020, that Aramark, partnered with Sedgwick, had closed her request for an accommodation because "Employee Did Not Participate" even though she was not informed of the next step after she was denied FMLA leave on September 18, 2020.

75.    Plaintiff's last day of work with Aramark was September 18, 2020.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

76.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

77.     The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendant and protect Plaintiff and FLSA Collective Members.

78.     Defendant failed to pay Plaintiff and FLSA Collective Members the minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

79.     Defendant failed to pay Plaintiff and FLSA Collective Members the minimum wage and overtime wages for all hours worked due to Defendants' time-shaving of employees' hours worked.

80.     Defendant failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

81.     Defendant's unlawful conduct has been willful and intentional. Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members the lawful minimum wage and overtime wages for all hours worked when Defendant knew or should have known such was due. Defendant has not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

82.     Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

83.     As a result of Defendant's willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied minimum wage and overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

84.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendant. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

85.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

86.     At all times relevant, Plaintiff and the Class have been employees of Defendant, and Defendant has been employers of Plaintiff and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

87.     Defendant failed to pay Plaintiff and Class Members at least the minimum wage and their proper overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

88.     Defendant failed to pay Plaintiff and the Class the full and proper wages for all hours worked due to Defendant's time-shaving of employees' hours worked.

89.     Defendants failed to pay Plaintiff and the Class the full and proper wages for all hours worked.

90.    Defendant failed to furnish Plaintiff and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

91.    Defendant failed to furnish Plaintiff and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

92.    Defendant failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and the Class as required by the NYLL and the supporting New York State Department of Labor Regulations.

93.    Defendant failed to properly disclose or apprise Plaintiff and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

94.    As a result of Defendant's willful violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendant their unpaid wages due to time-shaving of employees' hours

worked, unpaid overtime wages for all hours worked, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

## COUNT III

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

95.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

96.    Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendant is a covered employer under the NYSHRL.

97.    Defendant violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq.*, by engaging in discriminatory employment practices and subjecting Plaintiff to disparate treatment, including a hostile work environment, based on her disability. Defendant subjected Plaintiff to inferior terms, conditions or privileges of employment on the basis of her disability, including termination.

98.    Defendant's conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

99.    As a result of Defendant's unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

100.   Due to Defendant's violations of the NYSHRL, namely, employment discrimination on the basis of disability, Plaintiff is entitled to recover from Defendant: (1) an injunction ordering Defendant to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## COUNT IV

## <u>VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW</u>
<u>(FAILURE TO ACCOMMODATE)</u>

101.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

102.    Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendant is a covered employer under the NYSHRL.

103.    Under the NYSHRL, "[i]t shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities . . . of an employee." NYSHRL § 296(3)(a). Defendant violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq.*, by being aware of and failing to reasonably accommodate Plaintiff's request for an accommodation based on her disability. Defendant was aware of Plaintiff's disability-related conditions, Plaintiff requested a reasonable accommodation related to her disability that would not impose an undue hardship on Defendant's business, and Defendant refused to provide an accommodation for her.

104.    At minimum, Defendant was required to engage in an individualized and interactive process regarding Plaintiff's request for a reasonable accommodation but Defendant failed to do so.

105.    Defendant's conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL, for which she is entitled to an award of punitive damages.

106.    As a result of Defendant's unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

107.    Due to Defendant's violations of the NYSHRL, namely, failure to reasonably accommodate Plaintiff's request for a disability-related accommodation, Plaintiff is entitled to recover from Defendant: (1) an injunction ordering Defendant to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Members, and the Class, respectfully requests that this Court grant the following relief:

a.    Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b.    Certification of this case as a class action pursuant to Rule 23;

c.    Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

d.    An award of unpaid wages resulting from Defendants' failure to pay wages for all hours worked, in violation of the FLSA and NYLL;

e.    An award of liquidated damages as a result of Defendants' willful failure to pay full and proper wages for all hours worked, pursuant to the FLSA or NYLL;

f.    Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage notices, as required by the NYLL;

g.    Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage statements, as required by the NYLL;

h.    An order awarding relief for Defendants' discriminatory conduct, including but not limited to economic, compensatory and punitive damages;

i.    Pre-judgment and post-judgment interest;

j.  Reasonable attorneys' fees and costs of this action;

k.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

l.  A declaratory judgment that the practices complained of herein are unlawful under the NYSHRL;

m.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

n.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  May 10, 2021                    Respectfully submitted,

                                        **BROWN KWON & LAM, LLP**

                          By:       _/s/ Clara Lam_____

                                        Clara Lam, Esq. (CL6399)
                                        521 Fifth Avenue, 17th Floor
                                        New York, NY 10175
                                        Tel.: (718) 971-0326
                                        Fax: (718) 795-1642
                                        clam@bkllawyers.com
                                        *Attorneys for Plaintiff*

## CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT

I, JESSICA SERRANO hereby consent to be a party plaintiff pursuant to 29 U.S.C. § 216(b), in an action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., against ARAMARK CAMPUS, LLC, and/or related entities and individuals to recover unpaid wages, liquidated damages, and other damages and relief available under the Fair Labor Standards Act.


DocuSigned by:

_____
C546166D0D1E420...

Name: JESSICA SERRANO


4/20/2021

Date:  _____