BROWN
KWON &
LAM LLP

Brown Kwon & Lam LLP
Attorneys at Law
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
Email: info@bkllawyers.com

Writer's Direct: clam@bkllawyers.com
(212) 295-5827

October 7, 2021

**Via ECF**
Hon. Gary R. Brown, U.S.D.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re: **Jessica Serrano v. Aramark Campus, LLC**
       **Civil Action No. 2:21-cv-02614-GRB-AKT**

Dear Judge Brown:

  The undersigned counsel for Plaintiff Jessica Serrano ("Plaintiff") respectfully requests approval of the settlement of Plaintiff's claims under the Fair Labor Standards Act (the "FLSA") and her related claims under the New York Labor Law ("NYLL"). Plaintiff requests that these claims be dismissed with prejudice. Defendant Aramark Campus, LLC ("Defendant") does not oppose this request.

### INTRODUCTION AND BACKGROUND

  This action is filed, in part, under the FLSA, 29 U.S.C. §201, *et seq.*, and the NYLL against Defendant for alleged unpaid wages, including alleged unpaid overtime wages, which Plaintiff claims are owed for time worked during Plaintiff's employment with Defendant. Plaintiff is a former employee of Defendant and was separated from employment with Defendant effective on or about September 18, 2020. On May 10, 2021, Plaintiff filed an action in the United States District Court for the Eastern District of New York, captioned *Jessica Serrano v. Aramark Campus, LLC*, 2:21-cv-02614-GRB-AKT (the "Civil Action"), which alleges that Defendant owed Plaintiff unpaid wages and seeks damages under the FLSA and NYLL. In the same Civil Action, Plaintiff also alleged that Defendant violated the New York State Human Rights Law ("NYSHRL"). Claims related to alleged violations of the NYSHRL have been addressed in a separate settlement agreement.

  Following several weeks of negotiation, Plaintiff and Defendant have negotiated a Fair Labor Standards Act settlement ("Agreement") that fairly compensates Plaintiff as a compromise for a portion of her claimed damages under the FLSA and NYLL. Considering Defendant's anticipated defenses, the potential for a loss, and further consideration, Plaintiff believes this is a reasonable compromise for settling her FLSA and NYLL claims.

# THE PROPOSED SETTLEMENT

The Agreement between Plaintiff and Defendant provides for a gross sum of $10,000.00, inclusive of attorneys' fees and costs. Pursuant to the Agreement, Plaintiff will receive $6,398.67 and her counsel will receive a total sum of $3,601.33, consisting of $3,199.33 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs) and $402.00 for the cost of filing. A copy of the fully executed Agreement is attached hereto as Exhibit A.

Defendant does not admit any liability and, in fact, denies any liability in connection with this compromise and has reached this agreement solely to avoid the burdens and costs of further litigation. Although Plaintiff believes she can succeed on her FLSA and NYLL claims, Plaintiff recognizes the risks addressed by Defendant in settlement discussions, and ultimately believes that settlement is in her best interest.

Notably, in the process of facilitating settlement, Plaintiff's counsel compiled a detailed breakdown of allegedly unpaid wages, and this breakdown estimated that Plaintiff's total unpaid wages amounted to $5,599.13. Even if Plaintiff had recovered liquidated damages under the FLSA, Plaintiff's counsel estimated that the *maximum recovery* available under the FLSA would have been $11,198.26. Additionally, Plaintiff's calculation for alleged damages would not materially differ under the NYLL, despite the six-year statute of limitations, because the majority of her allegations regarding unpaid wages relate to her duties as a "Lead Cook," and Plaintiff was not hired in this position until January 2019. *See* Docket No. 1, Complaint at ¶ 43. However, including statutory penalties under the NYLL, pursuant to the Wage Theft and Prevention Act ("WTPA"), Plaintiff's total recovery under both the FLSA and the NYLL would be $21,198.26. *See* Exhibit B.

Given the risks of litigation, which were discussed in arms-length settlement negotiations between Plaintiff's counsel and Defendant's counsel, as well as the benefits of settling prior to expensive and time-consuming written discovery and motion practice, Plaintiff and Defendant submit that the Agreement represents a fair and adequate resolution of the FLSA and NYLL claims at issue.

**A. The Proposed Settlement Should Be Approved.**

When parties settle FLSA claims with prejudice, the settlement of such claims generally must be approved by a district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Clark v. Ecolab Inc.*, No. 04CIV. 4488PAC, 2010 WL 1948198, at *7 (S.D.N.Y. May 11, 2010) (citations omitted). Courts favor settlement of claims and, therefore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Kochilas v. Nat'l Merchant Servs., Inc.*, No. 14-CV-00311, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015). Based on the contested nature of this litigation and the quality of the settlement, this Court should conclude that this settlement is a reasonable resolution of a *bona fide* dispute.

"Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky*

to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 US Dist LEXIS 20963, at *13 (S.D.N.Y. Feb. 8, 2019) (internal quotation marks omitted); *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Accordingly, in determining whether a proposed FLSA settlement is fair and reasonable, courts consider the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Id.* at 335.

The first factor weighs in favor of approval. Based on estimated damages calculations, Plaintiff's range of possible recovery was between $0 and $21,198.26. The settlement amount of $10,000.00 represents a 47.2% recovery of Plaintiff's best-case scenario, including liquidated damages and statutory penalties under the WTPA. Excluding liquidated damages, the $10,000.00 settlement amount represents a 100% recovery of her unpaid wages based on her best-case scenario, and approximately 44% of her statutory penalties under the WTPA based on her best-case scenario. Particularly in light of the litigation risks discussed below, this settlement recovery is a fair and reasonable result.

The second and third also favor approval. Both sides face serious litigation risks relating to damages and liability. For example, Defendant asserts that they acted in good faith and compensated their employees according to their punch clock records, and as such, if a factfinder agrees, Plaintiff would be precluded from recovering any liquidated damages, which would reduce her recovery. Another risk is Plaintiff's allegation seeking recovery of unpaid wages due to time-shaving. While Plaintiff believes she could establish liability, this would require significant time and prolonged litigation as Defendant expressly denies any violation of law or any liability to Plaintiff. Such a claim relies heavily on deposition testimony, which would require extensive testimony to determine whether Plaintiff was indeed time-shaved, and if so, for how many minutes per workday or how many hours per workweek. Such a determination is costly, requires extensive litigation, and would result in a further reduction of Plaintiff's recovery if a factfinder determines that Plaintiff was not time-shaved or if she were time-shaved for less time than alleged.

For the foregoing reasons, the Parties believe that the settlement amount is fair and reasonable. Plaintiff is able to obtain a significant recovery of her alleged damages without the burden of further litigation and trial. While Defendant denies the allegations in the Complaint, as the parties are still in the preliminary stages of litigation, without having completed formal discovery and depositions, Defendant believes that the settlement is fair and reasonable so as to avoid the anticipated burden and expense of further discovery and the fee-shifting nature of FLSA cases.

The fourth and fifth factors also weigh in favor of approval. The settlement was reached through arm's-length negotiations over the course of several months of negotiations. Both Parties' counsel have significant experience with wage and hour claims. Also, there is clearly a lack of fraud or collusion as the settlement amount represents a significant percentage of Plaintiff's potential recovery – 47.2% of her total estimated damages under the best-case

3

scenario, and at least 100% of her alleged damages for unpaid wages under her best-case scenario.

Additionally, the non-monetary terms of the Agreement are fair and reasonable. Specifically, the "Waiver & Release" provision is restricted to matters that arise or may exist or arise under or pursuant to the FLSA and/or NYLL. *See* Exhibit A. The red-flag issues identified in *Cheeks* are not present here. The Agreement does not contain an overly broad general release, or a confidentiality or non-disparagement provision. *Id*.

In order to resolve Plaintiff's non-wage claims, including her discrimination claims brought in this matter under the NYSHRL, the parties have entered into a separate agreement, also dated October 7, 2021. This separate agreement contains a confidentiality provision and general release, but does not restrict or prohibit Plaintiff from discussing the facts or circumstances related to or underlying her claims made pursuant to the FLSA and NYLL. *See Chowdhury v. Brioni Am., Inc.*, No. 16 Civ. 344, 2017 U.S. Dist. LEXIS 196469, at *13 (S.D.N.Y. Nov. 29, 2017) ("Judges in this District routinely approve bifurcated settlement agreements, in which the parties submit their FLSA agreement for court review and approval but enter into a separate agreement that addresses the non-FLSA claims, which does not require judicial [review and approval] and may contain provisions that would be impermissible under *Cheeks*.") (citing *Ortiz v. Breadroll, LLC*, No. 16 Civ. 7998, 2017 U.S. Dist. LEXIS 73657, at *4-5 (S.D.N.Y. May 15, 2017); *Santos v. Yellowstone Props., Inc.*, No. 15 Civ. 3986, 2016 U.S. Dist. LEXIS 61994, at *3, n. 1 (S.D.N.Y. May 10, 2016) (approving bifurcated settlement agreements, one resolving plaintiff's FLSA claims and the other privately resolving plaintiff's discrimination claims and containing a general release).

Lastly, as will be discussed below, Plaintiff's counsel's requested attorneys' fees are not excessive as they only seek one-third of the settlement, which is typical of FLSA cases. The parties' separate agreement for the release of Plaintiff's non-wage claims also provides for attorneys' fees in the amount of one-third of the settlement amount. Based on the foregoing, there is no evidence of fraud or collusion. Therefore, Plaintiff respectfully requests that the Court find that the Agreement is a "fair and reasonable" compromise of her FLSA claims against Defendant and approve the settlement.

### B. Plaintiff's Attorneys' Fees and Expenses Should Be Approved.

Plaintiff and Plaintiff's counsel's retainer agreement sets forth a contingency fee for attorneys' fees of one-third, which is routinely approved by courts in the Second Circuit on FLSA and NYLL claims. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *see also Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277 (E.D.N.Y. Sept. 19, 2013). The amount requested for attorneys' fees is fair and reasonable as it was the fee agreed upon by Plaintiff in her retainer agreement, and a contingency fee of one-third is sufficient to account for the risks associated with representation.

As such, Plaintiff's counsel's receipt of a total sum of $3,601.33, consisting of $3,199.33 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs) and $402.00 for

4

the cost of filing, is fair and consistent with common practice in this district. *See e.g.*, *Chamoro v. 293 3rd Cafe Inc.*, No. 16 Civ. 339, 2016 U.S. Dist. LEXIS 136101, at *9-10 (S.D.N.Y. Sep. 30, 2016) (holding that court filing fees, service of process, costs of mailing, legal research, and other litigation costs are generally recoverable). As such, Plaintiff's counsel's attorneys' fees and costs are fair and reasonable and should be approved by the Court.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully submits that the settlement should be approved in its entirety. Should Your Honor require any additional information, the parties are available at your convenience.

Respectfully submitted,

*/s/ Clara Lam*
Clara Lam, Esq.
clam@bkllawyers.com

cc: all parties via ECF